*1192 Egan Jr., J.
Appeal from an order of the Supreme Court (LaBuda, J.), entered October 11, 2013 in Sullivan County, which denied plaintiffs motion for summary judgment in lieu of complaint.
In May 2007, plaintiff, which owned and operated a fuel oil and kerosene delivery business from its premises located at 32 Stanton Corners Road in the Town of Liberty, Sullivan County, sold its business to Darren Mapes for $425,000. Mapes, in turn, incorporated under the name Jus-Sar Fuel, Inc., and Jus-Sar thereafter leased the physical premises from plaintiff for $1,500 per month. As part and parcel of the sale of the business, plaintiff executed a covenant not to compete, wherein it agreed, among other things, that it would not — for a period of five years — own or operate a fuel delivery business or otherwise engage in conduct that competed with Jus-Sar’s business within a 50-mile radius of the business premises. According to Mapes, plaintiff thereafter violated the covenant not to compete when, in or about August 2008, plaintiffs president, Angela Streppone, and her associate, Henry Hulst, began handing out business cards advertising Polar Bear Fuel Oil, Inc. — a corporation allegedly formed by one of plaintiffs former employees and purportedly operated out of Hulst and Streppone’s residence.
In the interim, in September 2007, defendant Swan Lake Developers LLC purchased the Stanton Comers Road premises — consisting of a residence, an office and two garages— from plaintiff for $450,000. The underlying mortgage was guaranteed by defendant George Kaufman and, in conjunction with this sale, Jus-Sar’s lease was assigned to Swan Lake. According to defendants’ brief, the parties were aware — at the time that Swan Lake purchased the premises — of outstanding code enforcement issues with respect thereto.
Beginning in July 2009, individuals identified as “Angela” and “Hank” began filing complaints with the Town of Liberty relative to the premises now owned by Swan Lake — contending, among other things, that the premises were being utilized without the required certificates of occupancy. Thereafter, in November 2009, plaintiff and Swan Lake entered into a settlement agreement and, the following month, executed a subordination and modification agreement, pursuant to the terms of which plaintiff agreed to subordinate its 2007 mortgage to a new mortgage in the amount of $150,000. Although not entirely clear from the record, the new mortgage apparently was designed to enable Swan Lake to pay off its indebtedness to plaintiff — amounting to $155,000 — pursuant to an agreed-upon *1193 payment schedule commencing on December 1, 2012 and, further, to undertake the repairs and renovations required in order to bring the premises into compliance with the local building code. The subordination agreement was guaranteed solely by defendant Yitzchok Kaufman, and the corresponding settlement agreement expressly provided that “[t]he covenants, representations, warranties, and agreements ... of the parties hereto shall survive the execution and delivery of this [a]greement.”
According to George Kaufman, Swan Lake thereafter retained an engineering firm to address and resolve the outstanding code enforcement issues — both for the purpose of complying with settlement/subordination agreements and “also [to] finalize arrangements between Swan Lake . . . and Jus-Sar for the continued rental of the premises and its prospective purchase by Jus-Sar for the amount of $300,000.” Apparently dissatisfied with the resulting proposal, Mapes decided to hire his own engineer. In the interim, however, according to both George Kaufman and Mapes, Hulst and Streppone continued to file repeated code enforcement complaints, which ultimately resulted in the issuance of a cease and desist order.[1] Such order, in turn, led to Jus-Sar vacating the Stanton Corners Road premises and the resulting loss of Swan Lake’s tenant and prospective buyer. The corresponding loss of income, according to George Kaufman, led to Swan Lake’s failure to make the December 2012 payment required by the settlement/ subordination agreements.
Thereafter, in April 2013, plaintiff commenced this action by moving for summary judgment in lieu of complaint (see CPLR 3213) — alleging that defendants failed to make the required payments. Defendants opposed the requested relief and asserted counterclaims sounding in tortious interference with business relations, breach of the implied covenant of good faith and fair dealing and prima facie tort. Supreme Court denied plaintiffs motion, deemed plaintiffs motion papers to be a complaint and directed defendants to interpose their answer and counterclaims within 20 days. This appeal by plaintiff ensued.
We affirm. Preliminarily, inasmuch as the subordination agreement giving rise to this action was guaranteed solely by Yitzchok Kaufman, plaintiff is not entitled to summary judg *1194 ment against George Kaufman, as the latter bears no obligation to plaintiff under the terms of that agreement. As to the remaining defendants, we agree with Supreme Court that the subject counterclaims are inextricably intertwined with the underlying settlement/subordination agreements, thereby precluding an award of summary judgment (see GTE Automatic Elec. v Martin’s Inc., 127 AD2d 545, 547 [1987]; compare Stevens v Phlo Corp., 288 AD2d 56, 56 [2001]). Notably, both the affidavit tendered by George Kaufman and the affirmation offered by one of defendants’ attorneys, which references a December 2010 letter authored by the attorney,[2] delineate actions undertaken by plaintiff following the execution of the relevant agreements that, according to defendants, resulted in the loss of their tenant, otherwise impaired their rights and/or ability to utilize the subject property and ultimately led to their inability to comply with the terms of the subordination agreement. Under these circumstances, plaintiffs motion for summary judgment in lieu of complaint was properly denied.
Devine and Clark, JJ., concur.

. Although Mapes’ affidavit predates the execution of the settlement/ subordination agreements in late 2009, the chronology of events set forth in, among other things, the affidavit tendered by George Kaufman suggests that the misdeeds undertaken by Hulst and Streppone continued after that time.

. The attorney’s affirmation essentially incorporated’ the provisions of a December 2010 letter that he authored, wherein he summarized, among other things, plaintiffs conduct following the execution of the subject agreements. As such affirmation was “subscribed and affirmed by him to be true under the penalties of perjury,” it has “the same force and effect as an affidavit” (CPLR 2106 [a]) and may, together with other proof in the record, be properly considered in opposition to plaintiffs motion.